IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CRUMA JOE CRAWFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:04CV00303 |
| ) | |
| JOHN E. POTTER, ) | |
| POSTMASTER GENERAL, ) | |
| THE UNITED STATES POSTAL ) | |
| SERVICE, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

BULLOCK, District Judge

Plaintiff Cruma Joe Crawford ("Plaintiff") filed this action against Defendant John E. Potter, Postmaster General, United States Postal Service ("Defendant") on April 5, 2004, alleging employment discrimination based on race and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII Claims"). Plaintiff also brings claims for tortious interference with contract, negligent infliction of emotional distress, and intentional infliction of emotional distress ("Plaintiff's Tort Claims"). Defendant has moved for summary judgment on Plaintiff's Title VII Claims pursuant to Fed. R. Civ. P. 56 and to dismiss Plaintiff's Tort Claims pursuant to Fed. R. Civ.

P. 12(b). For the following reasons, the court will grant Defendant's motions for summary judgment and to dismiss.

FACTS

For more than twenty years, and at all times relevant to the matter before this court, Plaintiff, an African-American male, was an employee of the United States Postal Service. In the years 2000 and 2001, prior to the incidents giving rise to Plaintiff's instant claims, Plaintiff was also a union shop steward. In that position, Plaintiff represented himself and other postal employees in bringing grievances and Equal Employment Opportunity Commission ("EEOC") complaints, some relating to discrimination and retaliation, against the Postal Service. (Pl.'s Mem. Supp. Opp'n Def.'s Mot. Summ. J. (hereinafter "Pl.'s Mem."), Ex. A, ¶ 4.)

On December 7, 2002, Plaintiff was a letter carrier assigned to the Westside Station in Greensboro, North Carolina. On that date, Plaintiff entered a different postal station, the Summit Station, while off-duty, but in uniform, for the purpose of confronting postal employee Crystal Waddell concerning money Waddell allegedly owed Plaintiff. Plaintiff and Waddell had an argument inside the Summit Station, during which Plaintiff raised

2

his voice and allegedly used violence and/or the threat of violence against Waddell.

Following initial interviews concerning the incident, Plaintiff's supervisor, Mike Chicosky, placed Plaintiff on emergency off-duty, non-pay status beginning on December 9, 2002, for a period not to exceed fourteen days.  On December 16, 2002, Chicosky completed his investigation of the incident and determined that Plaintiff had violated the Postal Service's policy of zero tolerance of violence in the workplace.  Chicosky recommended that Plaintiff be permanently removed from the Postal Service.  (Def.'s Mem. Supp. Mot. Dismiss and Summ. J. (hereinafter "Def.'s Mem."), Ex. I.)  Plaintiff's station manager, Editha Strickland, concurred with that recommendation.  On December 17, 2002, Plaintiff filed a grievance claiming that his discipline was without just cause and alleging that other postal employees had had arguments on the workroom floor without suffering any disciplinary action.  (Def.'s Mem. Ex. J.)

Plaintiff received a written notice of proposed removal on December 24, 2002.  (Pl.'s Mem. Ex. A ¶ 14.)  The notice set forth the Defendant's conclusions concerning Plaintiff's conduct[1]

---

[1] Specifically, the notice concluded that Plaintiff admitted he entered postal premises "for the sole purpose of confronting a postal employee about personal issues," dumped out the contents of Waddell's purse, rifled through the contents thereof and raised his voice to embarrass her.  (Def.'s Mem. Supp. Mot. Dismiss and Summ. J. Ex. A.)

3

and informed Plaintiff that, as a consequence, he was to be removed from the Postal Service no sooner than thirty days from the date of his receipt of the notice. (Def.'s Mem. Ex. A.) The notice further informed Plaintiff that he had the right to file a grievance under the grievance/arbitration procedures of Plaintiff's National Labor Agreement within fourteen days.

Significantly, on December 27, 2002, Plaintiff requested an appointment with an EEO dispute resolution specialist, thereby taking the initial step in the EEO complaint process. (Def.'s Mem. Ex. K; Young v. Nat'l Ctr. for Health Servs. Research, 828 F.2d 235, 237 (4th Cir. 1987) (first step for federal employee in filing a suit for unlawful discrimination is to speak to an EEO counselor), judgment vacated on other grounds, 498 U.S. 1019 (1991); 29 C.F.R. § 1614.105(a) (2005)). In response, on December 30, 2002, the EEOC mailed Plaintiff a form to complete, called an Information for Pre-Complaint Counseling Form ("EEO Information Form").

On December 31, 2002, with the foregoing disputes and proposed discipline pending, Plaintiff, along with his representative from the National Association of Letter Carriers ("NALC"), met with Strickland. At this meeting, the parties reached an agreement whereby Plaintiff would be permitted to keep his job, which agreement was put in a writing titled "SETTLEMENT AGREEMENT" (the "Settlement Agreement"). (Def.'s Mem. Ex. A.)

4

The Settlement Agreement provides the "full and final settlement of all outstanding issues relating to the emergency placement and proposed removal of [Plaintiff]." It states that the "proposed removal is reduced to a 14-day suspension," without pay, which suspension shall be considered "time-served."[2] It provides that the Settlement Agreement represents the parties' "official action regarding this incident." Importantly, the Settlement Agreement includes the following waiver provision executed by Plaintiff: "I waive any and all rights to appeal this action in any forum, including, but not limited to grievance/arbitration . . . ." The Settlement Agreement is signed by Plaintiff, his NALC representative, and Strickland.

As agreed, Plaintiff continued in his job with the Postal Service. He took no further action concerning the incident or his grievances until February 10, 2003, when he completed the EEO Information Form. (Def.'s Mem. Ex. K.) Therein, Plaintiff asserted that he was the victim of discrimination based on race, sex, age, and retaliation concerning the incident, the suspension and proposed removal. Plaintiff alleged that "management fail[ed] to investigate or give the other individual the same treatment, in this case and several others." Plaintiff sought to

---

[2] The Settlement Agreement also provides that since Plaintiff had already been paid for some or all of the emergency suspension period, he would repay those wages. The parties further agreed that Strickland would conduct "official discussions" concerning the incident with Plaintiff and Waddell.

5

be paid for the days he had been suspended and to have his personnel filed cleared of the alleged allegations.[3] When Plaintiff was asked if he had filed a grievance "on the same issue," he answered "yes" and stated that it was "Resolved." Yet Plaintiff did not disclose the Settlement Agreement in the EEO Information Form.

On or about April 8, 2003, Plaintiff filed an EEO Complaint of Discrimination in the Postal Service, alleging discrimination based on race, sex, age, and retaliation arising out of the actions of Chicosky and Strickland on December 9, 2002. (Def.'s Mem. Ex. L.) The remedy sought therein was "[t]hat the settlement agreement be removed" from Plaintiff's personnel file and that he be paid for the ten days during which he was suspended. During the investigation of his EEO complaint in June 2003, while represented by the same lawyer who represents him in the present action, Plaintiff again admitted that his "grievance on the issue(s) in this case" was "resolved, but not to my satisfaction." (Def.'s Mem. Ex. A.)[4]

---

[3] Although Plaintiff claimed retaliation, when asked to list the dates and specifics of the EEO activity he felt caused him to be retaliated against, Plaintiff answered "NA."

[4] At that time, Plaintiff also sought compensatory damages for "emotional pain and suffering" in the amount of $25,000.00, although he had not sought medical treatment for his alleged injuries.

6

The EEOC issued its final agency opinion on January 5, 2004. The Agency did not address the Settlement Agreement, but instead decided Plaintiff's claims on their merits. The Agency concluded that Plaintiff failed to establish a <u>prima facie</u> case of discrimination based on age, race, sex or retaliation. (Compl. Attach. 1; Def.'s Mem. Ex. M.) The opinion further set forth Plaintiff's standard appeal rights, including the right to file a civil action in an appropriate United States District Court. Plaintiff filed the instant action on April 5, 2004, seeking monetary damages for backpay, emotional pain and mental anguish, attorney's fees, and costs. Plaintiff also seeks punitive damages.

DISCUSSION

Summary judgment should be rendered when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the language of a contract is plain and unambiguous, its interpretation is a question of law for the court to decide, not for the jury, and summary judgment is proper. <u>Carolina Cas. Ins. Co. v. Draper & Goldberg, P.L.L.C.</u>, 138 Fed.App'x 542, 544 (4th Cir. 2005);

7

World-Wide Rights Ltd. P'ship v. Combe, Inc., 955 F.2d 242, 245 (4th Cir. 1992); Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981) (trial court possesses inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing); Radiator Specialty Co. v. First State Ins. Co., 651 F. Supp. 439, 443 (W.D.N.C.), aff'd, 836 F.2d 193 (4th Cir. 1987).[5]

In this case, Plaintiff admits the existence and validity of the Settlement Agreement.[6] He had the benefit of union representation at the settlement meeting and does not argue that his consent to the settlement was involuntary.[7] Rather, Plaintiff asks this court to interpret the Settlement Agreement in a way that permits him to pursue the present action against Defendant. Plaintiff makes this argument despite his repeated admissions that his grievance "on the same issue" was already "resolved,"

---

[5] See also Davison v. Duke Univ., 194 S.E.2d 761, 783 (N.C. 1973) (interpretation of a contract is question of law, not fact); Lowe v. Jackson, 140 S.E.2d 1, 2 (N.C. 1965) ("It is well settled that where the language of a contract is plain and unambiguous, it is for the court and not the jury to declare its meaning and effect.").

[6] Plaintiff "does not deny the veracity of the [Settlement] [A]greement" and admits that "a settlement was reached." (Pl.'s Mem. Supp. Opp'n Def.'s Mot. Summ. J. 6 & Ex. A, ¶ 16.)

[7] The Supreme Court has reasoned that "presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement" so long as consent to the settlement is "voluntary and knowing." Alexander v. Gardner-Denver Co., 415 U.S. 36, 51-52, n. 15 (1974).

8

albeit not to his "satisfaction." In contrast, Defendant argues that Plaintiff resolved his instant claims pursuant to the Settlement Agreement and should be held to the terms thereof.

The parties point to the following specific provisions of the Settlement Agreement: (a) the statement that the Settlement Agreement is "in full and final settlement of all outstanding issues relating to" the suspension and proposed removal of Plaintiff, and (b) Plaintiff's waiver of "any and all rights to appeal [the actions set forth in the Settlement Agreement] in any forum including but not limited to grievance . . . ." In interpreting the Settlement Agreement, this court must apply North Carolina law.[8]

Plaintiff seeks a narrow interpretation of these provisions. He argues that his instant Title VII and Tort Claims were not "outstanding," but instead were "future claims," at the time he executed the Settlement Agreement. He also argues that the instant claims are not "appeals" of the parties' agreed action, but new and independent claims. For these reasons, Plaintiff

---

[8] <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938) (holding federal court must apply law of the forum state when adjudicating non-federal questions); <u>Eli Research, Inc. v. United Commc'ns Group, L.L.C.</u>, 312 F. Supp. 2d 748, 754 (M.D.N.C. 2004) (holding that in deciding non-federal questions relating to contract, federal courts must apply <u>lex loci contractus</u>, or the law of the place where the contract was formed); <u>Fortune Ins. Co. v. Owens</u>, 526 S.E.2d 463, 466 (N.C. 2000) (applying principle of <u>lex loci contractus</u>).

9

argues that his instant claims are not controlled by the Settlement Agreement. (Pl.'s Mem. 6.)

The court is not persuaded by Plaintiff's argument. Ambiguity is not created merely by a difference of opinion between the parties on the issue of what certain terms mean. <u>Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.</u>, 172 S.E.2d 518, 522 (N.C. 1970). Rather, a settlement agreement, like all contracts, must be interpreted according to its plain meaning. <u>DeLoach v. Lorillard Tobacco Co.</u>, 391 F.3d 551, 557 (4th Cir. 2004) (holding that under North Carolina law, "as under general principles of contract law, our task is to 'give ordinary words their ordinary meanings.'") (quoting <u>Internet East, Inc. v. Duro Commc'ns, Inc.</u>, 553 S.E.2d 84, 87 (N.C. 2001)).

According to its plain meaning, the Settlement Agreement was meant to resolve, forever and completely, all issues between the parties relating to the incident, suspension, and proposed discipline therefor. In other words, the Settlement Agreement was intended to put an end to exactly the type of claims Plaintiff attempts to assert in the present action. It is significant that there has been no new incident at work or new action taken by Defendant. Rather, all of Plaintiff's claims, including his Title VII and Tort Claims, arise out of the incident, Defendant's investigation thereof, and the discipline imposed therefor. Indeed, at the time he executed the Settlement

10

Agreement, all of the relevant events had occurred and were known to Plaintiff.[9] On the date he signed the Settlement Agreement, Plaintiff had already asserted essentially the same claims, arising out of the same set of facts, that he now wishes to pursue in this court, by (1) filing his grievance on December 17, 2002, wherein he complained that other employees were not disciplined for similar conduct, and (2) taking the initial step in the EEO complaint process by requesting a meeting with an EEO dispute resolution specialist on December 27, 2002.

Knowing all this, in order to keep his job and reduce his discipline to a time-served suspension, he agreed to settle all the issues he had with Defendant. It would contradict the plain meaning of the Settlement Agreement to permit Plaintiff to pursue additional claims based on the same set of operative facts. Plaintiff did not preserve for later litigation any additional claims arising out of the incident and the proposed discipline.[10]

---

[9] Plaintiff knew at that time that Defendant had recommended that he be permanently removed from employment at the Postal Service. He also knew, based on his experience as shop steward, the relative severity of discipline faced by other postal employees, of differing races, for similar misconduct. (Pl.'s Mem. Ex. A ¶ 17.) He admits that he believed as early as 2000 that his supervisors did not like him because of his previous EEO grievances. (Pl.'s Mem. Ex. A, ¶ 4 & Ex. B ¶¶ 4-5.) Finally, any emotional distress which Plaintiff may have suffered had already occurred, at least in part.

[10] As set forth above, the record contains repeated admissions by Plaintiff that his grievances relating to the incident and the proposed discipline were previously resolved.

11

Accordingly, the instant claims were "outstanding" at the time Plaintiff executed the Settlement Agreement and were, therefore, resolved on December 31, 2002. Defendant is entitled to summary judgment as to all of Plaintiff's instant claims on this basis.[11]

The court is similarly unpersuaded by Plaintiff's argument that his Title VII claims are not waived by the Settlement Agreement because they are based on "an original right" and "information and facts discovered after the settlement agreement." (Pl.'s Mem. 6.) Assuming arguendo that claims arising out of newly discovered facts would be exempt from the waiver provisions of the Settlement Agreement, Plaintiff's affidavits are insufficient to create a question of fact on this issue.[12] By Plaintiff's own admissions, the facts related to whether the discipline proposed and that ultimately imposed by

---

[11] Even if Plaintiff had not resolved his Tort Claims pursuant to the Settlement Agreement, those claims would be unavailable to him by operation of the exclusive and preemptive provisions of Title VII, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e-16. Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976); Pueschel v. United States, 369 F.3d 345, 353 (4th Cir. 2004).

[12] The strongest evidence Plaintiff provides of "new facts" is contained in the Affidavit of Robert L. Siler, which amounts to his mere speculation that Plaintiff's supervisor, Strickland, may have improperly relied on information from one of Plaintiff's former supervisors and/or Plaintiff's personnel file in determining what discipline to recommended following the incident. (Pl.'s Mem. Ex. B.) The affidavit makes clear that Siler has no personal knowledge that Strickland's actions were based on retaliatory or discriminatory reasons. Such speculation does not rise to the level of evidence necessary to create a question of material fact.

Defendant were too harsh under the circumstances (whether due to Defendant's knowledge of Plaintiff's prior EEO activity and/or Plaintiff's race) were known to Plaintiff at the time he executed the Settlement Agreement. As early as 2000 and 2001, Plaintiff worked as a shop steward and had, in that capacity, seen what degree of discipline is typically imposed for various infractions. In fact, Plaintiff's affidavit states that he believes the discipline he received was excessive and without justification "based on my experience while working as a shop steward." (Pl.'s Mem. Ex. A, ¶ 17.) He also came to believe at that time that his supervisors did not like him due to his prior EEOC grievances on his own and others' behalf. Plaintiff no doubt considered all of these factors when deciding to settle his case with Defendant in December 2002.

Thus, Plaintiff's affidavits support the conclusion that, at the time he executed the Settlement Agreement, Plaintiff knew of sufficient facts to raise all the claims he now wishes to bring. He could have proceeded with his grievance. Instead, Plaintiff chose to forego that option in return for the benefits provided to him in the Settlement Agreement.

It would be inequitable to hold that while Plaintiff enjoyed the benefit of his bargain pursuant to the Settlement Agreement, i.e., continued employment since December 2002, he is also permitted to pursue additional claims against the Defendant

arising out of the same incident and proposed discipline. <u>Petty v. Timken Corp.</u>, 849 F.2d 130, 133 (4th Cir. 1988) (affirming district court's enforcement of a settlement agreement resolving Title VII claims because "judicial economy commands that a party be held to the terms of a voluntary agreement"). Rather, equity demands that both parties receive the benefit of their bargain pursuant to the Settlement Agreement. Accord <u>Strozier v. Gen. Motors Corp.</u>, 635 F.2d 424, 426 (5th Cir. 1981) (upholding summary judgment against plaintiff on a Title VII lawsuit based, in part, on his prior settlement of those claims in the grievance procedure); <u>Newton v. Meijer Stores Ltd. P'ship</u>, 347 F. Supp. 2d 516 (N.D. Ohio 2004) (granting summary judgment to employer against plaintiff who had settled his grievance and signed a waiver of further proceedings); <u>Anderson v. Frank</u>, 755 F. Supp. 187 (E.D. Mich. 1991) (granting summary judgment to employer where plaintiff settled her claim in grievance procedure, then brought discrimination suit).

CONCLUSION

Because the Settlement Agreement requires entry of judgment for the Defendant on both Plaintiff's Title VII and Tort Claims, granting Defendant's motion to dismiss the Tort Claims provides only an independent and alternative basis for the dismissal of

14

those claims for the reason set out in footnote 11.  Defendant's motions for summary judgment and to dismiss will be granted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_____
United States District Judge

October 4, 2005